**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AETNA LIFE INSURANCE COMPANY,** | § § § | **JURY DEMANDED** |
| **Plaintiff,** | § § | |
| **VS.** | § § | **CIVIL ACTION NO. _____** |
| **CLEVELAND IMAGING AND SURGICAL HOSPITAL, L.L.C., d/b/a DOCTORS DIAGNOSTIC HOSPITAL, 2920 ER, L.L.C., d/b/a TRINITY HEALTHCARE NETWORK and ER DOC 24/7 PLLC,** | § § § § § § § | |
| **Defendants.** | § § | |

## AETNA'S ORIGINAL COMPLAINT

Aetna Life Insurance Company ("Aetna" or "Plaintiff") files this Original Complaint ("Complaint") against Defendants Cleveland Imaging and Surgical Hospital, L.L.C. (d/b/a Doctors Diagnostic Hospital), 2920 ER, L.L.C. (d/b/a Trinity Healthcare Network), and ER DOC 24/7 PLLC (collectively "Defendants"), and would respectfully show the Court as follows:

### I.
### PARTIES

1.      Plaintiff Aetna is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

2.      Defendant Cleveland Imaging and Surgical Hospital, L.L.C. d/b/a Doctors Diagnostic Hospital ("DDH") is a limited liability company organized under the laws of the State of Texas, and regularly conducts business in Cleveland, Texas.  Defendant DDH may be served with Plaintiff's Complaint by service on its Agent for Service, Dr. Camil I. Kreit, 1017 South Travis, Cleveland, Texas 77327.

3.     Defendant 2920 ER, L.L.C. d/b/a Trinity Healthcare Network ("Trinity") is a limited liability company organized under the laws of the State of Texas, and regularly conducts business in Spring, Texas.  Trinity may be served with Plaintiff's Complaint by service on its Agent for Service, Kalpana R. Kocheria, 18 Meadowridge Place, The Woodlands, Texas 77381.

4.     Defendant ER DOC 24/7 PLLC ("ER DOC 24/7") is a professional limited liability company organized under the laws of the State of Texas, and regularly conducts business in Cleveland, Texas.  ER DOC 24/7 may be served with Plaintiff's Complaint by service on its Agent for Service, Rafael De La Flor, 31 N. Heritage Hill, The Woodlands, Texas 77381.

## II.
### JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over the Defendants as all are Texas entities doing business in Texas.

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Specifically,

(a)     Plaintiff Aetna is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

(b)     Defendant DDH is a limited liability company organized under the laws of the State of Texas.  On information and belief, its only member/owner is Camil I. Kreit, who is a citizen of the State of Texas.

(c)     Defendant Trinity is a limited liability company organized under the laws of the State of Texas.  On information and belief, its only member/owner is Sushma Gorrela, who is a citizen of the State of Texas.

(d)     Defendant ER DOC 24/7 is a professional limited liability company organized under the laws of the State of Texas.  On information and belief, its only member/owner is Rafael De La Flor, who is a citizen of the State of Texas.

7.      Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States.

8.      Venue is proper in the Southern District of Texas because one or more of the Defendants are located in this judicial district, 29 U.S.C. §§ 1132(e)(2) & 1391(b)(1), and a substantial part of the events giving rise to the claims occurred here.  29 U.S.C. § 1391(b)(2).

### III.
### FACTUAL BACKGROUND

**A.     The FECs Improperly Sought Facility Fees That Are Available Only To Hospital-Based Emergency Rooms**

9.      Trinity and ER DOC 24/7 (also referred to herein collectively as the "FECs") allegedly provide "emergency" medical services to walk-in patients at freestanding centers located in Spring and Cleveland, Texas.  The FECs purport to treat assorted minor medical emergencies, including headaches, eye problems (*e.g.*, pink eye), colds, dehydration, urinary tract infections, allergic reactions, simple lacerations and burns, asthma, and similar ailments.

10.     Trinity and ER DOC 24/7 started to submit claims to Aetna for payment of assigned benefits for medical services allegedly provided to Aetna health care plan members in 2007 and 2011, respectively.  The claims at issue were submitted under (i) self-funded plans for which Aetna provided various third-party claims administrative services, (ii) plans insured under a group policy that Aetna issued, all for plans which private employers established and maintained, and (iii) plans covering federal employees.

11.     The FECs are out-of-network (*i.e.*, non-contracted) medical providers.  Typically, there are two components to payments for services provided in actual hospital emergency rooms: a "professional" fee and a "facility" fee.  This suit involves facility fees.  Even though the FECs are not hospital-based emergency rooms, they have wrongfully submitted facility fee charges to Aetna.  The FECs have, in essence, masqueraded as hospital emergency rooms, without a license or any of the associated overhead and cost structure.  They seek the benefits, including the facility fees, that Texas law allows only for hospital-based emergency rooms that provide true emergency services.  And, while they are in fact nothing more than urgent care centers, the FECs must claim the contrary, as otherwise they cannot claim that their "emergency" services must be reimbursed at their wildly inflated rates.

12.     Medical providers are required to submit their claims to Aetna using the Current Procedural Terminology (CPT®) Codes and Place-Of-Service ("POS") Codes that accurately identify both the medical services that were performed and the location of the services, as set forth in the American Medical Association's CPT® Code Manual.  The FECs have used CPT® Evaluation and Management ("E&M") Codes 99281-99285 and CPT® POS Code 23, which are reserved exclusively for hospital-based emergency departments.  By acting as if the services were provided in a hospital-based emergency room, the FECs are impermissibly attempting to receive a facility fee for medical services at grossly inflated rates.

13.     A "facility" is a term of art under Texas law.  An entity is not entitled to facility fees simply because it has a building that it calls an emergency center.  Facility fees are what actual hospital-based emergency departments are entitled to bill for the services they provide.  To be a facility under Texas law, an entity must be a statutorily defined health care provider, *i.e.*, a facility licensed by the State of Texas.

**B.      The Texas Department Of Insurance Instructed That Unlicensed Entities Are Not Entitled To Facility Fees**

14.      Years before the claims at issue herein, Aetna asked the responsible state governmental agency, the Texas Department of Insurance (the "Department" or "TDI"), what was Aetna's responsibility to pay for services performed in a freestanding emergency center that, like Trinity and ER DOC 24/7, is "not licensed in the state of Texas as a health care facility, but seeks to bill as a facility due to the types of services provided by the center."  The Department issued a letter on January 19, 2006, instructing that "carriers are ***not*** required to pay for services performed by an ***unlicensed*** entity.  As such, carriers are not required to pay facility charges billed by freestanding emergency centers that do not have a license from the Department of State Health Services."[1]

15.      The FECs are not licensed by the State of Texas, and never have been.  As unlicensed entities, the FECs are not entitled to be paid a facility fee under Texas law, especially when the regulatory authority instructed that the FECs are disqualified from reporting and receiving the facility fee available only for hospital-based care.  For this reason, among others, Aetna has consistently denied Trinity's claims for reimbursement of its facility fees when it submitted them directly under its own Provider/Tax Identification Number ("TIN"), which it did prior to February 1, 2011.

**C.      The FECs Entered Into A Sham With DDH To Circumvent Texas Law And Defraud Aetna**

16.      Because Aetna refused to pay facility fees to unlicensed freestanding emergency centers, both Trinity (as it had previously done with First Street Hospital located in Bellaire, Texas) and ER DOC 24/7 entered into a sham with DDH to circumvent Texas law and defraud

---

[1]   A true and correct copy of the January 19, 2006 letter is attached hereto as Exhibit 1 (emphasis added).

Aetna as part of a scheme to get Aetna to start paying the facility fees. The FECs entered into separate "management contracts" with DDH under which the FECs began seeking facility fees using DDH's TIN as a "front." In exchange for allowing Trinity to use its TIN to submit claims, DDH receives 8% of Trinity's gross billings. Similarly, pursuant to its contract with ER DOC 24/7, DDH receives 10% of ER DOC 24/7's gross billings. ER DOC 24/7 and Trinity began to improperly submit claims for facility fees using DDH's TIN in January 2011.

17.     Significantly, no substantive change to the FECs' operations occurred. In fact, under these so-called "management contracts," both Trinity and ER DOC 24/7 continue to maintain their respective management teams. Nor was there any change in ownership. The agreements between DDH and the FECs establish the Defendants' wrongful conduct and their collective intent to defraud Aetna by seeking facility fees to which they are not entitled. They are nothing more than contracts that let the FECs use DDH's hospital license and TIN to obtain facility fees that they all knew would not otherwise be paid if the FECs submitted them for payment using their own TINs.

**D.     The FECs' Operations Remained Unchanged Under The Agreement With DDH**

18.     The Defendants knew that, but for the FECs using DDH's TIN to seek facility fees, Aetna had in the past and would continue in the future to reject claims for such fees. Accordingly, they conspired to allow the FECs to use DDH's hospital license in an attempt to defraud Aetna into paying them facility fees. Each Defendant had actual knowledge that Aetna would not otherwise pay the facility fees, that Aetna had previously denied payment to unlicensed FECs, and that the agreements between DDH and the FECs did not in any way change the nature of services provided to Aetna members or Defendants' operations.

19.     Indeed, there was no legitimate business purpose or synergistic relationship supporting the agreements between DDH and the FECs. DDH was not (and still is not) a full-

service inpatient hospital to which the FECs can readily transfer patients suffering from emergent conditions who require further emergency or inpatient care.  Rather, DDH is a small, short-term care hospital located in Cleveland, Texas, which handles mostly outpatient medical procedures. DDH is not located near Trinity and has only four (4) inpatient beds.  Although Trinity's webpage represents that Trinity is a "Department of DDH," nowhere on DDH's website does it reference any emergency departments, much less Trinity or ER DOC 24/7.  In fact, DDH's webpage does not even identify emergency care as one of the services that it provides.

20.    Since entering into their agreements with DDH, on information and belief, the FECs have never transferred a single patient to DDH for additional treatment or inpatient care. Indeed, on its website, Trinity indicates that patients who require inpatient care are typically transferred to either Houston Northwest Medical Center or Tomball Regional Medical Center. Nowhere on Trinity's website does it even mention DDH as a potential location to transfer a patient in need of extended emergency and/or inpatient care.

**E.      DDH Attempted To Cover Up Its Sham "Affiliation" With The FECs**

21.    After the FECs began to submit facility fees for payment using DDH's hospital license under DDH's TIN, Aetna sought information concerning the nature and legitimacy of the arrangement between DDH and the FECs.  Specifically, in September 2011, Aetna contacted Dr. Jeff Ackerman, an Administrator of DDH, to inquire about the business relationship between DDH and the FECs.  Dr. Ackerman represented to Aetna that Trinity and ER DOC 24/7 were "satellite ERs" of DDH.  This representation, which implied that the FECs were truly owned and operated by DDH, was false or, at a minimum, materially misleading.

22.    Dr. Ackerman never advised Aetna that the arrangement between DDH and the FECs was a sham, the purpose of which was to deceive Aetna into paying facility fees to the FECs to which they were not entitled.  He failed to advise that the agreements between DDH and

HOU:3197746.5

-7-

the FECs did not change the operations at the FECs at all. He failed to advise that the agreements did not change the stock ownership of the FECs. He failed to advise that the FECs had never transferred any patients to DDH for admission or that every patient that the FECs had admitted to a hospital since entering into the agreement had been admitted to a hospital other than DDH. Dr. Ackerman also failed to advise that, contrary to legitimate affiliations between hospitals and offsite emergency departments, there had been no integration of operations between the FECs and DDH.

23. Moreover, in perpetration of their fraud, DDH submitted claims to Aetna for services rendered at the FECs using CPT® E&M Codes 99281-99285 and CPT® POS 23, which are reserved exclusively for hospital-based emergency rooms. The forms on which DDH submitted this information – the Center for Medicare and Medicaid Services (CMS) Form UB-04 – requires, among other things, that the provider certify that the information contained therein is "true, accurate and complete" and that the provider "did not knowingly or recklessly disregard or misrepresent or conceal material facts." By improperly using CPT® E&M Codes 99281-99285 and CPT® POS 23 when it submitted claims to Aetna for services rendered at the FECs, DDH misrepresented the nature of the services and the place of service (*i.e.*, emergency care services rendered in a hospital). Based on these misrepresentations, as well as Dr. Ackerman's materially misleading statements and failure to disclose the whole truth about the relationship between DDH and the FECs, Aetna paid facility fees to DDH for the services provided by the FECs.

**F.      DDH And The FECs Profited From The Fraud They Perpetrated On Aetna**

24. The FECs and DDH have fraudulently submitted claims to Aetna for millions of dollars in facility fees. In fact, the amount that Aetna paid for services submitted under DDH's TIN increased from approximately $150,000 in 2010 to almost $3.9 million in 2011. During 2012 thus far, Aetna has paid over $3.3 million in claims submitted under DDH's TIN. The

HOU:3197746.5

-8-

FECs were never entitled to a facility fee because they are not licensed.  The arrangement with DDH changes nothing.  DDH and the FECs have profited from the fraud committed against Aetna.  Aetna has been damaged as a result.

## IV.
## CLAIMS FOR RELIEF

**A.      First Cause of Action — Common Law Fraud/Fraudulent Nondisclosure**

25.      Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

26.      Each of the Defendants is liable to Aetna for common law fraud.  DDH, through its Administrator, Dr. Ackerman, made material misrepresentations concerning the arrangement between DDH and the FECs.  At the time these misrepresentations were made, DDH and Dr. Ackerman knew they were false or made them without regard to their truth or falsity.  Further, these misrepresentations were made with the intention that Aetna act upon them.  Aetna was induced to act upon these misrepresentations and paid facility fees that it never would have paid had Aetna known about the sham arrangement between DDH and the FECs.  The misrepresentations, and Aetna's reliance on them, were the direct and proximate cause of damages to Aetna.

27.      In addition, the Defendants are liable for fraudulent nondisclosure.  The Defendants purposefully concealed from and/or failed to disclose facts to Aetna concerning the true relationship between DDH and the FECs.  The Defendants owed a duty to disclose these material facts and knew that Aetna was unaware of their sham and/or did not have an equal opportunity to discover it.  By failing to disclose these material facts, the Defendants intended Aetna to pay facility fees, which Aetna would not have paid had Defendants properly disclosed

their true relationship.   Aetna relied on Defendants' nondisclosure and, as a result, suffered damages.

28.     Aetna seeks to recover its actual damages, consequential damages, incidental damages, and costs incurred from Defendants' actions.

**B.     Second Cause of Action — Negligent Misrepresentation**

29.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

30.     In addition, or in the alternative, the Defendants are liable for negligent misrepresentation.   DDH, through Dr. Ackerman, made material misrepresentations concerning the relationship between DDH and the FECs.   Further, by submitting claims for services rendered at the FECs using CPT® E&M Codes 99281-99285 and POS 23, DDH misrepresented the nature of the services and the place of service (*i.e.*, emergency care services in a hospital emergency room).   These misrepresentations were made in the course of DDH's business in which it had a pecuniary interest.   DDH supplied false information for the guidance of Aetna in its business.   DDH failed to exercise reasonable care or competence in communicating this information.   As a direct and proximate result of these negligent misrepresentations, Aetna has suffered damages.

31.     Aetna seeks to recover its actual damages, consequential damages, incidental damages, and costs incurred from Defendants' actions.

**C.     Third Cause of Action — Money Had and Received**

32.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

33.     In addition, or in the alternative, since at least February 2011, Aetna has paid facility fees to DDH and the FECs that it would not have paid but for the wrongful conduct of

the Defendants.  Aetna paid these fees based upon Defendants' misrepresentations and/or failure to disclose the lack of any legitimate affiliation between DDH and the FECs.  The facility fees Aetna paid should be returned to Aetna in equity and good conscience.  Accordingly, Aetna seeks from Defendants, the return of money had and received.

**D.      Fourth Cause of Action — Unjust Enrichment**

34.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

35.     In addition, or in the alternative, Defendants are liable under the principle of unjust enrichment.  Allowing Defendants to retain the facility fees paid for services allegedly rendered to members of Aetna's various health care plans — to which Defendants are not entitled — would unjustly enrich Defendants.  As a result, Aetna has suffered damages.

36.     Aetna seeks to recover its actual damages, consequential damages, incidental damages, and costs incurred from Defendants' actions.

**E.      Fifth Cause of Action — Civil Conspiracy**

37.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

38.     Defendants aided, abetted, and conspired with one another to defraud Aetna.  As a consequence, Defendants' wrongful conduct has damaged Aetna.

39.     Aetna seeks to recover its actual damages, consequential damages, incidental damages, and costs incurred from Defendants' actions.

40.     Inasmuch as DDH and the FECs conspired with one another in such a conspiracy, they are each liable for each others' acts.  Thus, Aetna is entitled to collect both actual and exemplary damages from DDH and the FECs, jointly and severally.

## V.
## EXEMPLARY DAMAGES

41.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

42.     Defendants' conduct was fraudulent, malicious, and grossly negligent and resulted in harm to Aetna.  As a consequence, Aetna is entitled to recover exemplary damages from Defendants.

## VI.
## REQUEST FOR DECLARATORY JUDGMENT

43.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

44.     An actual, justifiable controversy exists between Aetna, DDH, and the FECs concerning the FECs' submission of claims for reimbursement (via DDH's TIN) and Aetna's payment of facility fees. Pursuant to 28 U.S.C. § 2201, Aetna seeks a declaratory judgment that (1) the relationship between DDH and the FECs is and was a sham and/or is illegal, (2) the FECs are unlicensed entities, and thus, Texas law does not require Aetna to pay them or DDH a facility fee, and (3) Aetna is entitled to recoup all facility fees paid to the FECs and DDH from January 2011 to the present.

## VII.
## EQUITABLE RELIEF (ERISA)

45.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

46.     In the alternative, to the extent this dispute involves the exercise of Aetna's discretion under the terms of Employee Welfare Benefit Plans governed by the Employee Retirement Income Security Act ("ERISA"), Aetna is an ERISA fiduciary.  Aetna contends its

state law claims are not preempted and that they may be pursued because they do not relate to ERISA and are not preempted.

47.     To the extent that Defendants' entitlement to be paid arises pursuant to Aetna's plan members' assignments to them, Defendants are ERISA beneficiaries.

48.     Defendants are in actual or constructive possession and control over specifically identifiable funds that belong in good conscience to Aetna or the ERISA plans at issue in this suit.

49.     As authorized by 29 U.S.C. § 1132(a)(3), Aetna therefore seeks against Defendants all relief that was typically available in equity.

50.     Without limitation, Aetna seeks a declaration that (a) the affiliation or relationship between DDH and the FECs is a sham and/or is illegal, and (b) the FECs are unlicensed entities, and thus, Aetna is not required to pay them or DDH a facility fee.

51.     Without limitation, Aetna likewise seeks (a) a constructive trust over the facility fees that Defendants improperly demanded and received, (b) an order permanently enjoining Defendants from disposing of or transferring any of the funds still in their possession and control, and (c) an order requiring the return of such funds and a tracing of any portion of the funds no longer in Defendants' possession or control.

## VIII.
## ATTORNEYS' FEES

52.     Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint.

53.     Aetna seeks to recover its reasonable and necessary attorneys' fees and costs incurred in connection with prosecuting this action under, without limitation, 29 U.S.C. § 1132(g)(1).

## IX.
## CONDITIONS PRECEDENT

54.     Aetna has performed all conditions precedent, or they have otherwise been waived.

## X.
## JURY DEMAND

55.     Aetna demands a trial of this action by jury on all issues.

## XI.
## PRAYER

Plaintiff Aetna Life Insurance Company respectfully requests that Defendants Cleveland Imaging and Surgical Hospital, L.L.C. d/b/a Doctors Diagnostic Hospital, 2920 ER, L.L.C. d/b/a Trinity Healthcare Network, and ER DOC 24/7 PLLC be cited to appear and answer, and that on final trial hereof, Plaintiff have judgment against all of the Defendants, jointly and severally, for the following:

i.      An award of both actual damages and consequential damages;

ii.     An award of exemplary damages;

iii.    Declaratory relief as requested above;

iv.     Equitable relief as requested above;

v.      Reasonable and necessary attorneys' fees;

vi.     Costs of court;

vii.    Prejudgment and post-judgment interest; and

viii.   Such other and further relief at law or in equity to which Aetna may be justly entitled.

Respectfully submitted,

**ANDREWS KURTH LLP**


By:  s/ John B. Shely

        **John B. Shely**
        Federal ID No. 7544
        State Bar No. 18215300
        **Jeffrey D. Migit**
        Federal ID No. 20433
        State Bar No. 00794306
        **Dena Palermo**
        State Bar No. 08928830
        Federal ID No. 6082
        600 Travis Street, Suite 4200
        Houston, Texas 77002
        (713) 220-4152
        (713) 238-7206

        jshely@andrewskurth.com
        jmigit@andrewskurth.com
        dpalermo@andrewskurth.com

**ATTORNEYS FOR PLAINTIFF AETNA LIFE INSURANCE COMPANY**