UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Aetna Life Insurance Co., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-12-2451 |
| | § | |
| Cleveland Imaging | § | |
| and Surgical Hospital LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Partial Judgment

1.    *Introduction.*

    A licensed hospital sold the right to use its license-derived billing codes to three unlicensed clinics. The hospital – on behalf of the clinics – billed more than $9.2 million to an insurer in two years. In the year before this arrangement, the clinics – without a license – billed that insurer only $387,000. Because Texas prohibits this scheme, the insurer will recoup $8.4 million.

2.    *Background.*

    Cleveland Imaging and Surgical Hospital, LLC, is a four-bed hospital in Cleveland, Texas. Since 2006, it has been licensed by the Texas Department of State Health Services.

    In 2011, three unlicensed clinics:

Trinity Healthcare Network

ER DOC 24/7

Premier Emergency Room & Imaging

contracted to use Cleveland Imaging's provider number to bill insurers. In return, Cleveland Imaging received approximately 15% of each bill. Using the hospital's number made it look like the clinics' treatment happened at a full-service hospital, rather than an unlicensed clinic.

The hospital does not own or operate the clinics. The five doctors who own the hospital have no interest in ER DOC 24/7 and Trinity. Three of the hospital's owners – Ravi Moparty, Fadi Ghanem, and Khanh Le – partially own Premier with two other physicians. Each clinic has its own leases, utilities, equipment, and employees.

In July of 2012, the Centers for Medicare & Medicaid Services threatened to revoke Cleveland Imaging's status as a provider – a condition for a license in Texas. The agency said that too many of Cleveland Imaging's patients were not being admitted to the hospital for treatment. To reduce its ratio of inpatients to outpatients, it canceled its arrangement with the clinics.

Aetna has sued the clinics and the hospital for money-had-and-received, fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy. This opinion will only resolve the claim for money-had-and-received.

3.    *Had and Received.*

In a lawsuit for money-had-and-received, the question is who owns the money. Aetna need only show that the clinics have been paid money that – in equity and good conscience – belongs to it.[1] Overpayments are the hallmark of this type of lawsuit.[2]

Aetna says that it overpaid the hospital and clinics. Because they were not entitled to these higher fees, it wants its money back. It will take $8,412,116.01 from the clinics and the hospital – $5,761,701.40 in emergency fees and $2,650,414.61 in non-emergency fees.

4.    *Emergency Fees.*

In Texas, a doctor's office may charge higher fees if it is a licensed provider.[3] These facility fees are to cover the high operating expenses of hospitals and emergency rooms – expensive rent, costly machinery, and more workers with more varied skills.

---

[1] Staats v. Miller, 243 S.W.2d 686, 687 (Tex. 1951).

[2] City Bank of Houston v. First Nat. Bank of Houston, 45 Tex. 203, at *10 (1876)

[3] Tex. Ins. Code §§ 1271.155, 1301.069, 843.002(22).

The Texas Department of State Health Services lists seventeen examples of providers who may charge these fees – all are licensed by the government.[4] The three clinics concede that they were not licensed, but they say that they can charge these fees anyway because of their billing arrangement with a licensed hospital.

Although the clinics have arranged their bills to have a hospital's name on it, they are not owned or operated by a licensed hospital – a requirement of Chapter 254 of the Texas Health and Safety Code.[5] The billing contract cannot change the objective reality that the clinics are independently owned offices – offices not qualifying to be rated hospitals. They have separate doctors, management, leases, utilities, staffs, and equipment – and no license.

The clinics do not meet other requirements of chapter 254: they were not (a) surveyed as a service of the hospital and (b) granted provider-based status by the Centers for Medicare and Medicaid Services.[6] To earn this status, a doctor's office must swear to the agency that it meets criteria about supervision by a licensed hospital, financial integration, and clinical services – among other things.[7] The three clinics that contracted with Cleveland Imaging concede that they have not submitted those attestations. They would be false if they did.

When the Center learned of Cleveland Imaging's high ratio of outpatients to inpatients, it threatened to revoke its status as a provider. A hospital is required to offer substantial inpatient care; otherwise it would simply be a clinic and would not able to charge higher fees. To remedy this imbalance, the hospital had to cancel its arrangement with the clinics – showing that the clinics would not have qualified as providers even if they had been integrated or tried to apply for a license themselves.

The clinics insist that the Center did not revoke Cleveland Imaging's license as a hospital during the period about which Aetna complains. Nobody disputes this. If the healthcare for which these clinics billed had been performed at Cleveland Imaging, it may have been covered. It was not.

---

[4] Texas Dep't of State Health Services, Health Facility Program Home Page, http://www.dshs.state.tx.us/hfp/.

[5] Tex. Health & Safety Code § 254.052.

[6] Tex Health & Safety Code § 254.052(8)(B).

[7] 42 C.F.R. § 413.65(b)(3)(ii).

If these clinics want to charge higher fees, they need to become a licensed hospital, not craft devious, inauthentic billing contracts to make it appear as though they have become part of the hospital and complied. Aetna will take $5,761,701.40 in emergency fees from the clinics.

5.   *Non-emergency Fees.*

From January 1, 2012, through August 31, 2012, Cleveland Imaging billed Aetna for $7,309,190.04. Aetna paid $2,679,445.99 on bills coded POS 22. This code is for healthcare performed at "a portion of a *hospital* that provides . . . services to sick or injured persons who do not require hospitalization or institutionalization" (emphasis added).

Because the clinics were not licensed hospitals, they were not eligible for these fees. In Texas, a hospital is a licensed premise – a building – where inpatients are treated.[8] The clinics again concede that they are not licensed by Texas as hospitals. They have strictly relied on their billing arrangement. Cleveland Imaging's license only pertains to its premises – the building at 1017 South Travis Street in Cleveland, Texas. By law, the license cannot include off-site clinics and it cannot be transferred or assigned.[9]

Of the more than $7 million billed to Aetna in non-emergency fees, only $113,595 was for healthcare at Cleveland Imaging. The parties have stipulated that Aetna should recoup $2,650,414.61 if the clinics were ineligible for these fees. It will recover it.

6.   *Preemption.*

In 1974, the Employee Retirement and Income Security Act was passed to standardize claims against employee-benefit plans. It allows one federal claim for benefits, and it preempts all other claims – state and federal, common law and regulation, tort, and contract.

The hospital and clinic collected the money from Aetna because some worker had assigned his benefit to them. The worker assigned a claim for the medical benefit that he had received. He did not and could not have assigned the clinics a benefit that covered whatever they billed and however they billed it.

---

[8] 25 Tex. Admin. Code § 133.2(42).

[9] 25 Tex. Admin. Code § 133.21(c)(2); 25 Tex. Admin. Code § 133.21(f).

Because the clinics illegally billed the worker for an amount that should not have been paid, Aetna has sought to recover it. The workers' plans did not include a benefit for paying corrupt doctors. No part of the claim for money-had-and-received depends on recovering from a plan. The plans thought Aetna was seeking money acquired from it on false invoices.

Aetna has brought a claim about dishonest bills presented to it. It is not obliged to pay for an operation that was not performed; and, if it does, it may recover it. Texas's regulation of hospitals dictates what medical outfits may charge what kinds of fees. The plans limit their coverage to legal bills. Because the clinics were not licensed by Texas, they were not eligible to charge higher fees. The Act preserves a state's ability to regulate healthcare.[10]

The clinics say that Aetna's claim is preempted because it relies on interpreting the plans' requirements to collect co-pays and share costs. It does not. The Act is about beneficiaries recovering from plans – not the other way around.

Because the clinics got the disbursement on their fictitious bills from Aetna, a refund must be returned to Aetna, not the plan. If a disbursing agent for a plan accidentally sent the clinics a payment with an extra zero in the numerals, the clinics may not keep it no matter who was the principal of the agent. The clinics rights to the money depends entirely on the accuracy, fidelity, and legality of their billing. Their title is nonexistent – a thief's title.

The Employee Retirement Income Security Act does not preempt this lawsuit.

7.    *Prompt payment.*

To be entitled to prompt payment, the clinics must be entitled to payment. They are not licensed providers entitled to charge these fees. To the extent that Aetna owes them money, it will be an offset against the judgment. These claims would also be against the plan and, therefore, preempted under the Act.

8.    *Conclusion.*

Doctors and clinics may not contract to use a hospital's billing code to recover fees designed to compensate hospitals for expenses that they do not have.

---

[10] N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654–55 (1995).

-5-

Aetna Life Insurance Co. will take $8,412,116.01 from Cleveland Imaging and Surgical Hospital, LLC, Trinity Healthcare Network, ER DOC 24/7 PLLC, and Premier Emergency Room & Imaging.

Signed on August 20, 2014, at Houston, Texas.

Lynn N. Hughes
United States District Judge