IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
April 2, 2015
Lyle W. Cayce
Clerk

No. 14-20734

4:12CV2451

In re: 2920 ER, L.L.C., doing business as Trinity Healthcare Network,

Petitioner.

United States District Court
Southern District of Texas
FILED
APR 0 2 2015
David J. Bradley, Clerk of Court

Petition for a Writ of Mandamus
to the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:12-CV-2451

Before PRADO, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Defendant–Petitioner 2920 ER, L.L.C., ("Petitioner" or "2920") petitions for a writ of mandamus. Petitioner argues that the district court lacked the authority to grant "post-judgment discovery" or "damages discovery" and lacked authority to order Petitioner to refrain from transferring funds "other than to pay bills in the ordinary course of its business" without first obtaining the court's "permission." The district court has not yet entered final judgment, and it denied 2920's request for interlocutory appeal. We construe the mandamus petition as a notice of interlocutory appeal under 28 U.S.C. § 1292(a)(1). Because district courts ordinarily lack the authority to order

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20734

postjudgment remedies *before* a final judgment unless the court follows the strictures required for a preliminary injunction or for prejudgment remedies under Federal Rule of Civil Procedure 64, we vacate the district court's orders and remand.

## I. BACKGROUND

The following factual background is drawn from the district court's "opinion on partial judgment" filed on August 20, 2014. This case concerns a small, four-bed hospital in Cleveland, Texas called Cleveland Imaging and three unlicensed clinics, including the Petitioner's.

Cleveland Imaging allegedly used its billing codes (derived from its Texas hospital license) to allow neighboring clinics—operating without Texas hospital licenses—to bill insurers illicitly. Using the hospital's billing number, the unlicensed clinics made it appear as though their patients were treated at a full-service hospital rather than at an unlicensed clinic. This was an apparently lucrative difference: The hospital, acting on behalf of the unlicensed clinics, billed more than $9.2 million to an insurer in two years—whereas the year before, the unlicensed clinics billed that insurer only $387,000. The hospital does not own or operate the unlicensed clinics, but it received a kickback of about 15% of each bill under the terms of a contract.

After Texas threatened to revoke the hospital's license, Cleveland Imaging canceled this arrangement. The insurance company, Plaintiff–Respondent Aetna Life Insurance Co. ("Aetna"), sued the unlicensed clinics (including Petitioner) and the hospital in federal district court for money had and received, fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy.

The district court granted what it called "partial judgment" in a five-page opinion in response to several motions for partial summary judgment filed by Aetna. Addressing only the money-had-and-received claim, the court concluded

that: "Doctors and clinics may not contract to use a hospital's billing code to recover fees designed to compensate hospitals for expenses that they do not have." The court ordered that "Aetna Life Insurance Co. will take $8,412,116.01" from the defendants.

## II. THE DISTRICT COURT'S "POSTJUDGMENT" ORDERS

After the district court entered its order granting "partial judgment," the Receiver for Cleveland Imaging filed a "suggestion of bankruptcy" to notify the court of Cleveland Imaging's voluntary petition for Chapter 11 bankruptcy. Therein, the Receiver "suggest[ed] that the action against Cleveland Imaging" had been "stayed" pursuant to the automatic bankruptcy-stay provision, 11 U.S.C. § 362.

The district court then withdrew the reference to the bankruptcy court and lifted the automatic stay. Out of concern about "where the defendants have assets to satisfy [the district court's] judgment," Aetna asked for "postjudgment discovery" to obtain documents concerning whether the defendants "have transferred money out of their business entities to other persons."

Meanwhile, 2920 filed a motion asking the district court to certify its "partial judgment" as "final and appealable" under Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 1292(b). The district court denied the motions to certify partial judgment for interlocutory appeal without explanation two days later.

The district court also granted Aetna's motion for "postjudgment discovery" in a very brief order that same day without explanation. The district court held a hearing in which Aetna's counsel represented that, following the district court's "partial judgment" opinion, 2920 started "sending large round numbers out of 2920 to an entity called Spring Klein Surgery Center, which is listed [at a particular] address. But when you go out there, there's no hospital." Aetna's counsel represented that wire transfers of large round numbers

3

totaling "over $6 million ha[d] gone to [Spring Klein Surgery Center]," and that Aetna expects "that another [$]6 million in checks has gone to that same entity." Accordingly, Aetna asked the court for "some monitoring if [2920 is] going to continue to send money out to this entity or any other entity in these round numbers" and that 2920 "get approval from you before they do so."

The district court then essentially ordered an asset freeze from the bench. The court ordered: "No payments to Spring Klein until some explanation has been made of what they're for, no transfers that are not in response to a purchase order or some other objective commercial transaction."

After 2920 filed objections, the district court signed Aetna's proposed order on November 13, 2014, and thereby ordered that "[t]here shall be no further transfer of funds from 2920 other than to pay bills in the ordinary course of its business (i.e., rent and payroll), including no further transfer of funds to Spring Klein Surgical Hospital, without permission from the Court."

Petitioner 2920 seeks mandamus relief from these orders. Importantly, at no point has Aetna moved for a preliminary injunction or temporary restraining order (TRO), and at no point has the district court issued a TRO or expressly granted a motion for a preliminary injunction.

### III. MANDAMUS RELIEF AND JURISDICTION

Mandamus relief is an "extraordinary remedy," *Will v. United States*, 389 U.S. 90, 95 (1967), that is only available if three criteria are met:

> (1) First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process.
>
> (2) Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable.
>
> (3) Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be

satisfied that the writ is appropriate under the circumstances.

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted). "These hurdles, however demanding, are not insuperable." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Cheney*, 542 U.S. at 381).

The first criterion presents a threshold question whether mandamus relief is inappropriate here because 2920 had other means to attain relief—namely, an ordinary interlocutory appeal. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 8 n.6 (1983) ("[A] court of appeals has no occasion to engage in extraordinary review by mandamus . . . when it can exercise the same review by a contemporaneous ordinary appeal."). As noted above, the district court denied Petitioner's request for interlocutory appeal under 28 U.S.C. § 1292(b); however, that does not indicate whether there was interlocutory appellate jurisdiction under § 1292(a).

In response to 2920's petition for writ of mandamus, Aetna argues that the district court's "order freezing assets is an appealable interlocutory order" under 28 U.S.C. § 1292(a)(1), apparently presuming that the district court "grant[ed] [an] injunction[]," since that is what § 1292(a)(1) exclusively refers to. We agree.

Under 28 U.S.C. § 1292(a)(1) interlocutory injunctions are immediately appealable. "That the district court here did not label its order an injunction is not dispositive. In determining whether an order is appealable under section 1292(a)(1), we consider the substantial effect of the order." *Calderon v. U.S. Dist. Court for Cent. Dist. of Cal.*, 137 F.3d 1420, 1421 (9th Cir. 1998) (Kozinski, J.); *accord* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2962 & n.11 (3d ed. 2014) [hereinafter Wright & Miller] (collecting cases that "make it clear that the court will look at the actual effect of the order that is

No. 14-20734

issued by the district court when determining whether an appeal should be allowed." (collecting cases)); *see also McCoy v. La. State Bd. of Educ.*, 345 F.2d 720, 721 (5th Cir. 1965) (per curiam) ("In determining what is an appealable order under 28 U.S.C. [§] 1292(a)(1), courts look not to terminology, but to 'the substantial effect of the order made.'"). As discussed below, the substantial effect of the district court's order here was the same as a preliminary injunction—it essentially froze 2920's assets before the entry of final judgment. *See Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1526 (11th Cir. 1994) (treating an asset freeze as a preliminary injunction). Thus, because 2920 "could have obtained review of the district court's order through an ordinary [interlocutory] appeal, mandamus is not available," *Calderon*, 137 F.3d at 1422.

Therefore, the petition for writ of mandamus must be denied.

This does not end the matter, however. "A petition for mandamus filed in this court . . . may also satisfy the notice of appeal requirement," provided that it is filed within thirty days of the order to be appealed from. *Yates v. Mobile Cnty. Pers. Bd.*, 658 F.2d 298, 299 (5th Cir. 1981) (per curiam) (noting that this is "especially" important "when the appellant is proceeding pro se . . . and is thus generally ignorant of procedural rules"); *see* Fed. R. App. P. 4(a)(1); *see also Helstoski v. Meanor*, 442 U.S. 500, 508 n.4 (1979) (suggesting that a "petition for a writ of mandamus [could be] treated as an appeal" if it was filed on time); *Cobb v. Lewis*, 488 F.2d 41, 45 (5th Cir. 1974) ("Other courts have held that the requirement of notice of appeal is satisfied by[, *inter* alia,] a petition for mandamus filed in the Court of Appeals . . . . These cases teach that the notice of appeal requirement may be satisfied by any statement, made either to the district court or to the Court of Appeals, that clearly evinces the party's intent to appeal." (citations omitted)); *In re Clark*, No. 11-10407, 2011 WL 3861616, at *1 (5th Cir. July 8, 2011) (per curiam) (unpublished) ("We

6

No. 14-20734

construe Clark's mandamus petition . . . as a notice of appeal from those orders." (citing *Yates*, 658 F.2d at 299)).

Here, we think it is appropriate to construe 2920's mandamus petition—which was filed within thirty days of the challenged interlocutory orders—as a notice of appeal from those orders. Though 2920 is not proceeding pro se, *cf. Yates*, 658 F.2d at 299, we note that 2920 specifically requested permission from the district court to appeal the court's interlocutory orders, which were not labeled preliminary injunctions, and the district court denied its requests. The petition clearly evinces 2920's intent to appeal. *See Cobb*, 488 F.2d at 45. We further note that, "when the petition was filed, it was not unreasonable for the petitioner to believe that the district court's order was reviewable only by mandamus, not by direct appeal," in light of the district court's orders denying interlocutory appeal, *see Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 859 F.2d 1354, 1357–58 (9th Cir. 1988) (per curiam) (citing *Clorox Co. v. U.S. Dist. Court for N. Dist. of Cal.*, 779 F.2d 517, 520 (9th Cir. 1985)). Moreover, we note that in this case, as in *Compania Mexicana De Aviacion*, the time for notice of an interlocutory appeal has now expired, so 2920 lost its right to interlocutory appeal during the pendency of its mandamus petition and a "harsh result . . . would obtain if [its] mandamus petition were simply denied." *Id.*

Therefore, we conclude that 2920's petition for writ of mandamus has provided adequate notice to the parties and the court of its intent to appeal, *see Cobb*, 488 F.2d at 45, and we accordingly treat the petition as a notice of appeal. Thus, this Court has appellate jurisdiction to review the district court's interlocutory order under 28 U.S.C. § 1292(a)(1).

## IV.   DISCUSSION

We review decisions granting preliminary relief for abuse of discretion. *See Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253

(5th Cir. 2009). We can think of only three avenues that may justify the district court's orders here: preliminary injunctive relief under Rule 65, prejudgment relief under Rule 64, or postjudgment relief under Rule 69. The Federal Rules of Civil Procedure set up a dichotomy. Rules 64 and 65 provides for *pre*judgment remedies, and Rule 69 provides for *post*judgment remedies. Because prejudgment remedies by definition are available before the entry of judgment (and all of the preceding procedural protections that entails along the way), prejudgment remedies are more limited and are available *only if* the law of the state in which the district court sits so provides. Fed. R. Civ. P. 64; *see* 11A Wright & Miller, *supra*, § 2931 ("What these [prejudgment, provisional] remedies are, and the circumstances under which they are available, is determined by the law of the state in which the district court is held...."). Since postjudgment remedies are, by definition, available only *after* judgment and the significant procedural protections that entails—including the right to appeal the judgment and to seek a supersedeas appeal bond—Rule 69 provides for remedies under *both* state *and* federal law. Fed. R. Civ. P. 69(a) ("[T]he judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules *or* by the procedure of the state where the court is located." (emphasis added)); *see* 11A Wright & Miller, *supra*, § 3012 (explaining that "questions that arise in the enforcement of a money judgment" may be answered by resort to either federal statutes and rules or state law).

The federal rules reflect the tradition of American common law. As the Supreme Court explained in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, "as a general rule, a creditor's bill could be brought only by a creditor who had *already obtained a judgment* establishing the debt." 527 U.S. 308, 319 (1999) (emphasis added) (collecting cases).

No. 14-20734

> The rule requiring a judgment was a product, not just of the procedural requirement that remedies at law had to be exhausted before equitable remedies could be pursued, but also of the substantive rule that a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property. As stated by Chancellor Kent: "The reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary, and, perhaps, a fruitless and oppressive interruption of the exercise of the debtor's rights."

*Id.* at 319–20 (quoting *Wiggins v. Armstrong*, 2 Johns. Ch. 144, 145–46 (N.Y. Ch. 1816)).

In the *Grupo* case, the Supreme Court held that federal courts lack authority even to issue a preliminary injunction freezing assets in an action for money damages. *Id.* at 333 ("[W]e hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages."). Similarly, in *De Beers Consolidated Mines v. United States*, the Supreme Court held "Rule 70 of the Rules of Civil Procedure, which permits the issu[ance] of a writ of attachment or sequestration against the property of a disobedient party to compel satisfaction of a judgment, is operative *only after a judgment is entered.*" 325 U.S. 212, 218 (1945) (emphasis added) (footnote omitted).

These principles, taken together, establish that the prejudgment relief awarded by the district court here—though styled as "postjudgment relief"—was not authorized by federal law. Federal law authorizes the prejudgment freezing of Petitioners assets *only if* the relief requested "was traditionally exercised by courts of equity," *id.* at 219, and then only if the district court follows the procedural requirements for a preliminary injunction under Rule 65.

9

No. 14-20734

Rule 65's requirements were not followed here. The movant did not post "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c). And the district court did not specifically find that the movant, Aetna, had shown:

    (1) a substantial likelihood of success on the merits,

    (2) a substantial threat of irreparable injury if the injunction is not issued,

    (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, [or]

    (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quoting *Byrum*, 566 F.3d at 445). We have vacated a district court's injunction before because the district court "failed to enter findings of fact and conclusions of law in compliance with [Rule] 52(a) in its ruling." *Software Dev. Techs. v. TriZetto Corp.*, 590 F. App'x 342, 345 (5th Cir. 2014) (per curiam). The district court there imposed the injunction following a telephone conference. *Id*. We vacated the injunction reasoning that, even "[t]hough the district court did subsequently memorialize the telephone conference in a written order, it did not elaborate to include any specific findings" on the preliminary-injunction elements. *Id*. at 344–45.

The differences between the process the district court followed here and that required to issue a preliminary injunction are important. As noted, the movant Aetna would have been required to post security to obtain a preliminary injunction. Fed. R. Civ. P. 65(c). Further, had 2920 known that the district court was entering a preliminary injunction, 2920 would have also realized that the order was immediately appealable under 28 U.S.C. § 1292(a)(1). And with the right to appeal comes the right to stay the judgment by posting a supersedeas appeal bond, *MM Steel, L.P. v. JSW Steel (USA) Inc.*,

10

No. 14-20734

771 F.3d 301, 303 (5th Cir. 2014) (per curiam) (citing Fed. R. Civ. P. 62(d)). And, as noted, the district court is required to make specific findings on the elements of a preliminary injunction, *Software Dev. Techs.*, 590 F. App'x at 344–45; the district court did not do so here.

State law does not provide authority for the district court's discovery order. As noted, under Rule 64, federal courts must look to state law to provide prejudgment remedies, if any. Texas law is clear that a trial court abuses its discretion, and "mandamus is appropriate," if the trial court compels postjudgment discovery of the type the district court ordered in this case. *In re Elmer*, 158 S.W.3d 603, 605 (Tex. App. 2005—San Antonio, no pet.) ("We conclude that the trial court abused its discretion in compelling answers to interrogatories in aid of judgment in the absence of a final, appealable judgment.").

In its response, Aetna directs this Court to no contrary Texas authority except to point out that the Petitioner's argument "rests on a single case from the San Antonio court of appeals." Not so. Although Petitioner only cites *Elmer*—which happens to be directly apposite[1]—*Elmer* has been followed in at least one other Texas case. In *In re El Caballero Ranch, Inc.*, a Texas appeals court recently confronted similar facts; as in this case, there, "[t]he trial court made it clear that its amended order granting [the defendant's] motion for summary judgment was interlocutory, and *additional claims remained to be determined.*" No. 04-14-00584-CV, 2014 WL 6687242, at *3 (Tex. App.—San Antonio Nov. 26, 2014, no pet. h.). "Accordingly," the court held, "there is no final judgment subject to direct appeal and the procedural tools available for

---

[1] *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000) (concluding in an *Erie*-guess context that "[w]e cannot disregard . . . precedent provided by the intermediate appellate courts of Louisiana when the appellant offers nothing to suggest why the Louisiana Supreme Court would decide this case differently").

11

suspension of enforcement have not been triggered." *Id.* Moreover, this conclusion is consistent with federal principles which teach that "[a] judgment creditor may obtain discovery from any person, including the judgment debtor, in aid of the judgment or execution . . . *only after judgment.*" 12 Wright & Miller, *supra*, § 3014 (emphasis added).

Aetna also argues that a Fifth Circuit unpublished decision authorizes the relief fashioned by the district court here. This argument is unavailing. In *Animale Group Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) (per curiam), a panel of this Court observed that "Supreme Court precedent authoriz[es] pre-judgment asset restraints" in cases in which the plaintiff seeks "equitable relief . . . , not just money damages." *Id.* at 708–09. Aetna further maintains that it seeks equitable relief through its money-had-and-received claim, which this Court has previously held "is an equitable doctrine applied to prevent unjust enrichment" under Texas law. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (internal quotation marks omitted).

But this argument overlooks the fact that the district court in *Animale* followed Rule 65 and made the required findings on the preliminary-injunction elements. *See* 256 F. App'x at 708. In contrast, here, as discussed above, the district court's perfunctory orders did not analyze the required preliminary-injunction elements or make the required findings. *See Software Dev. Techs.*, 590 F. App'x at 344–45. The district court also repeatedly denied the Petitioner's requests for certification for interlocutory appeal. Thus, *Animale* does not lend support to the district court's orders.

The Texas cases cited by Aetna supporting the issuance of a "temporary injunction . . . to preserve the status quo pending an award of damages at trial," (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam)), are similarly unavailing. The relief granted by the district court in this case

neither followed the required preliminary-injunction procedures nor afforded 2920 the procedural protections of Rule 65—as the district court repeatedly made clear by denying requests for interlocutory appeal. Thus, neither *Animale* nor the cited Texas cases authorize the district court's orders here.[2]

In sum, the district court may have had authority to issue an explicit preliminary injunction before entering final judgment, but only if it found Aetna's action to be equitable in nature and it followed Rule 65's procedural protections. *See Animale*, 256 F. App'x at 708. Because the district court did not have authority to freeze assets before judgment without following the requirements of Rule 65, the decision was an abuse of discretion that we must vacate.

To the extent Aetna claims that this result would set the "judgment debtor . . . free to transfer assets to affiliated entities to make itself judgment-proof, safe in the knowledge that the court can do nothing to enjoin the transfers," that is simply not so. First, as discussed above, Aetna could file for a preliminary injunction under Rule 65—though it may have to post security and the order would be immediately appealable. Additionally, 2920 would presumably be subject to potential civil and criminal liability if it attempts to transfer money to avoid judgment creditors under the Uniform Fraudulent Transfer Act, which Texas has adopted and which "invalidate[s] a debtor's transfers made for less than reasonably equivalent value." *In re Soza*, 542 F.3d 1060, 1064 (5th Cir. 2008) (citing Tex. Bus. & Com. Code Ann. § 24.005(a)(2)).

---

[2] We also reject Aetna's mootness and waiver arguments. As 2920 points out in reply, the discovery and injunctive issues are not moot because 2920's obligations to comply with the district court's orders are ongoing. Further, that 2920 voluntarily agreed to comply with the district court's injunction and discovery orders after they were issued does not mean that 2920 has waived any objections to those orders: the record is replete with 2920's objections before the orders were issued, motions for reconsideration after those orders were issued, and requests to interlocutory appeal those orders. Aetna's mootness and waiver arguments simply find no support in the record.

No. 14-20734

Additionally, Aetna may avail itself of Texas prejudgment remedies. Fed. R. Civ. P. 64. In short, Aetna has many means at its disposal to secure its partial, and possibly final, judgment. These means are more onerous and entail more hurdles; however, those procedural hurdles protect judgment debtors from potentially abusive creditors. *See Grupo Mexicano*, 527 U.S. at 320.

Though the factual record developed below points to some troubling behavior on the part of 2920, we are obligated to vacate the district court's orders because these orders did not comply with Rule 65. On remand, Aetna's concerns may be addressed by prompt application of appropriate procedures.

## V. CONCLUSION

For the foregoing reasons, the petition for mandamus relief is DENIED, and the district court's order signed on November 13, 2014, prohibiting 2920 from transferring funds is VACATED, as are its orders compelling "postjudgment discovery"—except to the extent that such discovery is reasonably necessary to investigate pending claims under Rule 26. We REMAND to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.

Certified as a true copy and issued
as the mandate on Apr 02, 2015

Attest: *Jyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

## United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE  
CLERK

TEL. 504-310-7700  
600 S. MAESTRI PLACE  
NEW ORLEANS, LA 70130

April 02, 2015

Mr. David J. Bradley  
Southern District of Texas, Houston  
United States District Court  
515 Rusk Street  
Room 5300  
Houston, TX 77002

      No. 14-20734   In re: 2920 ER, L.L.C.  
                            USDC No.

Dear Mr. Bradley,

Enclosed is a certified copy of an opinion-order entered on April 2, 2015. We have closed the case in this court.

                             Sincerely,

                             LYLE W. CAYCE, Clerk

                             By: _____  
                             Joseph M. Armato, Deputy Clerk

Enclosure(s)

cc:  
    Mr. John Bruce Shely  
    Mr. Lawrence Duncan Thompson